THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES P. SINNOTT v. GEORGE SHEA, Chief Justice, and other Justices of the Marine Court of the City of New York.

*Justice of Marine Court, N. Y. — Appointment to fill vacancy by Governor alone, valid — Refusal by the justices to assign appointee to duty, proper subject of mandamus — their action ministerial only — chap. 137, Laws of 1828 — chap. 28, Laws of 1849 — chap. 389, Laws of 1852 — chap. 629, Laws of 1872, construed.*

A vacancy in the office of justice of the Marine Court of the city of New York having been created by the death of Alexander Spaulding, the relator was appointed by the governor to supply the vacancy. This appointment was made without the consent of the Senate, which was in session when it was made. On these grounds the chief justice and justices of the Marine Court declined to recognize the applicant, or assign him to duty in that capacity, and the relator applied for a writ of peremptory mandamus, directing the respondents to assign him to duty as one of the justices of the Marine Court.

*Held*, that the writ was not applied for to control the action of the court in the exercise of its discretion, or of the power possessed by it for the disposition of legal controversies submitted to its consideration, but simply to require the performance of a ministerial duty, in its nature depending upon the positive provisions of a statute, declaring that " the court shall appoint general and trial terms, and also special terms, and prescribe the duration thereof, and assign the justices for presiding thereat; and a majority of the justices may from time to time alter such appointments." (Vol. 2, Laws of 1872, 1496, § 4,

chap. 639.) That the reasons presented for refusing so to do, presented no such judicial determination as the law forbids the examination of, by means of the writ of mandamus.

*Held*, further, that the Constitution of 1846 abrogated the entire system for filling that office provided for by the act of 1828. That the act of 1849, providing that all vacancies in any of the offices of this State, where no provision was then made by law for filling the same, should be supplied by the appointment of the governor until the commencement of the next political year (Laws of 1849, chap. 28), included the office of justice of the Superior Court; and that the act of 1849 was clearly in force when the act (chapter 389) of 1852 was enacted, providing that vacancies in the office of justice of the Marine Court should be supplied in the manner prescribed for filling similar vacancies in the Superior Court. That it was intended by the act of 1852 that the office in question should be filled by the governor alone, without the consent of the senate.

*Held*, further, that the act of 1852 was the adoption and application to the Marine Court of the manner then prescribed for filling vacancies in the Superior Court, and was not repealed or modified by succeeding changes having reference to the Superior Court alone; and was not affected by the constitutional changes which went into effect in 1870. (Art. 6, §§ 9 and 12 of the Const.; vol. 7, General Statutes, 812, 813.)

*Held*, further, that section 18 of article 6 of the Constitution of 1846, has no application to the present controversy; that it relates to supplying the incumbent of the term as distinguished from a mere vacancy in office.

Aᴘᴘʟɪᴄᴀᴛɪᴏɴ for a writ of peremptory mandamus directing the respondents to assign the applicant to duty as one of the justices of the Marine Court.

*Chas. F. Machean* and *Wm. Fullerton*, for the applicant.

*Chas. Goepp*, justice, etc., in person.

Dᴀɴɪᴇʟs, J.:

It appears from the papers on which the application has been made, and the return voluntarily presented by the chief justice and justices of the Marine Court, and acting as a court, that a vacancy in the office of justice of that court had been created by the death of Alexander Spaulding, and that the applicant had been appointed by the governor to supply the vacancy. This appoint- ment was not made with the consent of the senate, which was in session when the vacancy arose; and for that reason the chief justice and the justices of the court concluded it to be unauthorized,

and declined to recognize the applicant as one of the justices of the court or assign him to duty in that capacity. Whether the learned chief justice and justices were right in adopting this conclusion is the substantial point this court is here required to decide. For, if they were not, no objection is made by the learned court that the writ applied for in behalf of the applicant is not the appropriate method of redress. But its members desire the question of right to be considered and decided by this court.

The office has been claimed by no other person, and if the applicant shall be found not entitled to it the vacancy must still continue to exist. The writ has not been applied for to control the action of the court in the exercise of its discretion or of the power possessed by it for the disposition of legal controversies submitted to its consideration. But simply to require the performance of a duty ministerial in its nature, dependent upon the positive provisions of a statute declaring that " the court shall appoint general and trial terms and also special terms," " and prescribe the duration thereof, and assign the justices for presiding thereat, and a majority of the justices may from time to time alter such appointments." (Laws of 1872, vol. 2, 1496, § 4.) Though in terms required to be done by the court, the power is one which must be exercised by the chief justice and justices in the exercise of their official functions, and they are the persons who must be required to act if the appointment relied upon can be sustained. Indeed they, themselves, have practically acted upon that view of their duties, for they, personally, convened as justices, for the consideration of the claim made by the applicant, and in like manner disposed of it upon the conclusion that no title to the office had been shown in his favor, because the senate had neither been consulted upon nor consented to the appointment. And that presented no such judicial determination as the law forbids the examination of by means of the writ of mandamus. The decision was not judicial in its nature, within the ordinary signification of that term, and was not designed to be so by the learned chief justice and justices by whom it was made. They were requested to assign the applicant to duty merely. That required the performance of an act strictly ministerial, and they declined to perform it solely because they did not consider that the governor could lawfully make the appointment without the consent of the

senate. His authority to make it was not a subject they were required to consider or decide as a court. But its consideration was simply incidentally involved in the act they were requested to perform ; and the conclusion adopted was the reason assigned for declining to perform what, in behalf of the applicant, has been urged as a duty. The practical point now presented is, whether the refusal to assign the applicant to duty for this reason can be sustained. That the chief justice and justices acted under the highest sense of public duty in making it is entirely evident, and the reasons assigned in support of it are certainly not without plausibility.

In making the appointment without the consent of the senate, the governor proceeded under an act passed in 1852, relating to the Marine Court, by which it was declared that any vacancy in the office of justice should be filled in the manner prescribed by law for filling vacancies in the offices of the justices of the Superior Court of the city of New York. (Laws of 1852, 647, § 3.) And by chapter 28 of the Laws of 1849, vacancies in the latter offices are claimed to have been placed exclusively within the executive power of appointment. That act was very general in its terms, providing for appointments by the governor alone, for the purpose of supplying official vacancies where no provision had then been made by law for filling them, subject to certain enumerated exceptions, not including the office of justice of the Superior Court. The only express provision which had previously been made upon that subject was contained in the act creating the Superior Court, passed in 1828. By that it was declared that the justices of the court should be nominated and appointed by the governor with the consent of the senate, and that all vacancies in the office should be supplied in the same manner. (Laws of 1828, 141, § 2.) And if that provision continued in force when the acts of 1849 and 1852 were enacted, the applicant's appointment was not lawfully made.

But, in 1846, an entire change was made in the mode by which judicial offices were to be filled. Instead of that being done, as it previously had been, by the nomination of the governor, with the consent of the senate, it was afterwards required to be done by popular election. (Art. 6, §§ 14, 18, Constitution of 1846.) And the legislature was required to provide for filling vacancies in

offices, which, in those that were elective, could be supplied under its authority no longer than until the commencement of the next political year. (Constitution, art. 10, § 5.) These provisions of the Constitution, to a very great extent, certainly superseded those of the act of 1828. That was clearly and effectively accomplished, so far as the term of the office of the justice of the Superior Court was concerned. After that Constitution went into effect, the office could be no longer filled by the nomination and appointment of the governor, with the consent of the senate; for its authority was peremptory that it should only be done by election. The power of appointment, for supplying vacancies in the office, was an addition made to, or an extension of that authority, to provide an incumbent for its full term; and the abrogation of the principle might well be attended with a repeal of the incident which was annexed to it for the mere purpose of rendering it complete and effectual. And that, as a general proposition, seems to have been so considered in framing the Constitution of 1846. The provision made requiring that the legislature should provide for filling vacancies in office, which, in such as were made elective, could not extend beyond the commencement of the next political year, clearly appears to have proceeded upon that understanding. The system provided for was a new one, and comprehensive legislation on this subject was considered to be necessary for harmonizing it and providing for its contingencies. And that was the view taken by the legislature on this precise point when it provided for filling the vacancy in the office of justice of the Superior Court created by the resignation of Justice Samuel Jones of that court. If so much of the act of 1828 as provided that vacancies in the office of justice of that court should be supplied by an appointment by the governor, with the consent of the senate, had then remained in force, there would have been no need of the enactment of chapter 291, of the Laws of 1847, which was passed for the sole purpose of providing the mode in which that particular vacancy should be filled. The passage of that act was equivalent to a legislative declaration that no authority existed without it, for supplying the vacancy which then existed in the court. And that could only have been true upon the understanding that the Constitution of 1846 had, by the changes made by it in the official tenure of judicial officers, practi-

cally abrogated the provision for supplying vacancies in the Superior Court made by the act of 1828. It is such cogent evidence of legislative intent, as to add very great, if not controlling, weight to the reasons already assigned in favor of the adoption of that conclusion. And it exhibited the necessity of a general act, such as was afterwards passed, providing that all vacancies in any of the offices of this State, where no provision was then made by law for filling the same, should be supplied by the appointment of the governor, until the commencement of the next political year. (Laws of 1849, 26.) And that included the office of justice of the Superior Court, if the conclusion is warranted, as it is believed to be, that the Constitution of 1846 abrogated the entire system for filling that office, provided for by the act of 1828. And as this act of 1849 was clearly in force when the act of 1852 was enacted, providing that vacancies in the office of justice of the Marine Court should be supplied in the manner prescribed for filling similar vacancies in the Superior Court, it follows that it must have been intended that the appointment should be made by the governor alone, without the consent of the senate. That was the manner referred to by the act of 1852, and it was observed and followed in the applicant's appointment.

The plain effect of the act of 1852 was that the vacancy should be filled, as it then could be if it existed in the Superior Court. The legislative intent contemplated the system solely as it then existed, and the provision made by it was not, in terms nor by implication, rendered contingent upon any changes which might afterwards be made for vacancies in the Superior Court. The enactment was in effect the adoption and application to the Marine Court of the manner then prescribed for filling vacancies in the Superior Court. And it was not repealed or modified by succeeding changes having reference to the Superior Court alone. That there was any express repeal has not been asserted; but it has been claimed that it should be implied from the constitutional changes which went into effect on the 1st of January, 1870. That, however, cannot be done, for the reason that they, in terms, only included the Superior Court. They contained no reference whatever to the Marine Court. And the change they made certainly was not contemplated by any thing

contained in the act of 1852. (Art. 6, §§ 9, 12 of the Const. ; vol. 7, Genl. Stats., 812, 813.) The system has been permanent as to the Marine Court, the only change made having sole reference to the Superior Court. In creating it the legislature contemplated the existing laws, and applied them to vacancies in the Marine Court, and that application was in no way intended to be changed by providing a different manner for supplying vacancies in the Superior Court. It substantially and in effect provided that vacancies in the office of justice of the Marine Court should be filled in the manner declared by the act of 1849, and that was by an appointment of the governor, without the action or consent of the senate.

Section 18 of article 6 of the Constitution has no application to the present controversy. That relates to supplying the incumbent of the term as distinguished from a mere vacancy in the office.

The case cannot be held to be free from doubt, but the decided weight of legislative authority is in favor of the right of the applicant. And as he has become qualified to exercise the authority and discharge the duties of the office he should be assigned to their performance, as one of the justices of the Marine Court.

The motion made should therefore be granted, but it should be without costs.

DAVIS, P. J., and BRADY, J., concurred.

Motion granted, without costs.